IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLD FOREMOST HOLDINGS, LLC,** : | | |
| Plaintiff : | No. 1:15-cv-02234 | |
| : | | |
| v. : | (Judge Kane) | |
| : | | |
| **RALPH C. MICHAEL, et al.,** : | | |
| Defendants : | | |

**MEMORANDUM**

This matter is presently before the Court on a motion to dismiss Counts III and IV of Plaintiff GLD Foremost Holdings, LLC's amended complaint. (Doc. No. 29.) Having considered the arguments raised by the parties in their respective briefs, and upon review of the applicable law, for the reasons provided herein, the Court will grant Defendants' motion for partial dismissal of Plaintiff's amended complaint.

**I.  BACKGROUND[1]**

The above-captioned action was initiated upon the filing of a five-count complaint by Plaintiff GLD Foremost Holdings, LLC ("GLD"), on November 20, 2015, asserting, inter alia, claims of breach of contract, fraudulent inducement and unjust enrichment against Defendants Ralph C. Michael ("Michael"), Laurie A. Myers ("Myers"), and Don E. Myers. An amended complaint was subsequently filed on June 20, 2016. (Doc. No. 26.)

This action concerns numerous alleged misrepresentations made by Michael and Myers in the course of negotiations for the sale of Foremost Industries, Inc.—a modular home manufacturing company headquartered in Franklin County, Pennsylvania ("Company")—to

---

[1] The following factual allegations relevant to this background section are taken directly from Plaintiff's amended complaint and are accepted as true for purposes of this motion to dismiss. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a Rule 12(b)(6) dismissal, [the court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

GLD. According to the amended complaint's allegations, in the years following the 2008 financial crisis, the Company suffered millions of dollars in financial losses, all of which were funded by the sale of certain Company assets as well as personal contributions by Michael, the Company's president and chief executive officer. (Doc. No. 1 ¶ 8.) Consequently, Michael resolved during this period to sell the Company, utilizing an investment banking firm to market the Company to potential buyers. (Id. at ¶ 14.) On or about December 14, 2014, Michael sent Dan Gordon ("Gordon") a letter, wherein Michael proposed that Gordon visit the Company's facilities in Franklin County and suggested that he would make Gordon a "special offer" to purchase the Company if Gordon agreed to a visit. (Id. at ¶¶ 16, 17.)

On February 15, 2015, Michael entered into exclusive negotiations with Gordon for the purchase of Michael's interest in the Company as a result of having exhausted his personal funds to cover the Company's operating losses. (Id. at ¶ 18.) In March of 2015, Gordon presented Michael with a draft Stock Purchase Agreement that outlined the terms and conditions of the anticipated purchase of all issued and outstanding shares of capital stock of the Company from Michael.[2] (Id. at ¶ 19.) As alleged in the amended complaint, Michael was "especially eager" to consummate a transaction given the Company's ongoing financial losses and his inability to continue to fund the Company's cash flow deficits. (Id. at ¶ 23.) In an effort to accelerate the transaction, Michael directed his counsel and Myers—Michael's daughter as well as controller and treasurer of the Company—to provide financial information regarding the Company, which was subsequently incorporated into the schedules of the Stock Purchase Agreement. (Id. at ¶ 24.) GLD contends that the information provided in the schedules that were later incorporated

---

[2] In anticipation of consummating the transaction, Gordon formed GLD, a Delaware limited liability company, to purchase, own, and operate the Company. (Id. at ¶ 19 n. 1.)

into a finalized Stock Purchase Agreement were "knowingly and intentionally misleading and/or incorrect." (Id. at ¶ 25.)

On or about May 29, 2015, Michael and GLD entered into the Stock Purchase Agreement, pursuant to which GLD purchased all of the issued and outstanding shares of capital stock of Foremost from Michael in exchange for, inter alia, $3 million due at closing. (Id. at ¶ 26.) GLD alleges that had it been made aware of certain misrepresentations regarding the Company's compliance with a number of laws and regulations, its present operations, and its financial position, it would not have signed the Stock Purchase Agreement or consummated the transaction. (Id. at 10-20.)

Defendants have moved to dismiss Counts III and IV of the amended complaint, which assert violations of 18 U.S.C. §§ 1962(c) and (d), respectively, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion has been fully briefed and is now ripe for disposition.

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar.

4

Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).[3]

### III. DISCUSSION[4]

    A.    COUNT III-VIOLATION OF 18 U.S.C. § 1962(C) OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Defendants move for dismissal of Count III of GLD's amended complaint on the basis that GLD has failed to allege a continuing pattern of repeated racketeering activity as required to state a claim under 18 § USC 1962(c) of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

The civil RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a substantive RICO claim under 1962(c), a plaintiff must plead and prove facts satisfying each of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as defined by 18 U.S.C. § 1961. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

---

[3] In addition to the complaint in this matter (Doc. No. 1), the Court has taken judicial notice of exhibits Plaintiff has appended to his complaint, including the Stock Purchase Agreement (Doc. No. 26-1).

[4] The Stock Purchase Agreement specifies that it "shall be governed by and construed under and in accordance with the substantive Laws of the State of New York, excluding any choice of law rules that might direct the application of the Laws of another jurisdiction." (Doc. No. 26-1 at 29.)

Here, Defendants contend that GLD has failed to plead facts supporting a reasonable inference that Defendants engaged in a "pattern" of racketeering activity. To establish a RICO pattern, the complainant must plead facts demonstrating (1) at least two predicate acts of racketeering activity, (2) the last of which occurred within ten years after the commission of a prior act of racketeering activity, (3) that are related, and (4) amount to, or pose a threat of, continuing criminal activity. Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)); see 18 U.S.C. §§ 1961(5), 1962(c). The fourth element—or the so-called continuity requirement—"is centrally a temporal concept, and may be either closed- or open-ended." H.J. Inc., 492 U.S. at 230; see World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 497 (S.D.N.Y. 2007) ("The continuity necessary to prove a pattern can be either 'closed-ended continuity,' or 'open-ended continuity.'") aff'd, 328 F. App'x 695 (2d Cir. 2009). Indeed, a party asserting a RICO violation must demonstrate continuing criminal activity occurring over either a closed or open period. Id.; GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir. 1995).

A close-ended pattern of racketeering activity is defined as a series of related predicate acts spanning a "substantial" period of time. Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (citing H.J. Inc., 492 U.S. at 242). Although the duration of the racketeering activity is often cited as the "most important factor in [evaluating] whether a closed-ended RICO pattern exists," the United States Court of Appeals for the Second Circuit also weighs such non-dispositive factors as " the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." GICC Capital Corp., 67 F.3d at 467–68. While the Second Circuit has not endorsed a bright-line rule for measuring whether the alleged span of time over which the predicate acts took place is of a substantial

6

duration, it notably has "never held a period of less than two years to [be] a 'substantial period of time.'" Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008) (quoting Cofacrèdit, S.A., 187 F.3d at 242). GLD concedes in its brief in opposition to Defendants' motion to dismiss that it does not attempt to demonstrate a pattern of racketeering activity in violation of RICO through allegations of continuity over a closed period. Rather, GLD clarifies that it "has sufficiently alleged . . . open-ended continuity, in that the pattern of illegal activity may continue through [the Company], if the Stock Purchase Agreement is rescinded . . . ." (Doc. No. 32 at 7.) Accordingly, the Court turns to whether GLD has sufficiently alleged an open-ended pattern of criminal activity.

Whereas closed-ended continuity requires allegations of past criminal conduct continuing over a substantial duration, a RICO plaintiff alleging open-ended continuity need not make a substantial temporal showing, but instead, must allege past criminal conduct coupled with an ongoing threat of criminal activity "extending indefinitely into the future." GICC Capital Corp, 67 F.3d at 466. The sine qua non of open-ended continuity is the threat of continuing criminal activity. Indeed, a plaintiff must demonstrate that defendant's conduct poses a threat that extends "beyond the period during which the predicate acts were performed." DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001) (quoting Cofacrèdit, S.A., 187 F.3d at 242).

District courts in the Second Circuit presented with allegations of an open-ended pattern of racketeering inquire into the nature of (1) the RICO enterprise at whose behest the predicate acts were performed, and (2) the predicate acts themselves, to aid in their assessment of whether a threat of continuing criminal activity exists. Cofacrèdit, S.A., 187 F.3d at 242. Specifically, the Second Circuit has instructed that:

> Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal

7

activity, and thus open-ended continuity. However, where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.

DeFalco, 244 F.3d at 323 (internal quotation marks and citations omitted). Thus, where an enterprise's primary purpose is to effectuate "inherently unlawful" objectives, a "threat of continued criminal activity" is presumed. Spool, 520 F.3d at 185. See, e.g., United States v. Indelicato, 865 F.2d 1370, 1383–84 (2d Cir. 1989) (en banc) ("Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity."); United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995) ("[W]here the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established.").

Where the RICO enterprise does not fall into the "inherently unlawful category," but rather, the complaint's allegations support its engagement in a legitimate business, "no presumption of a continued threat arises." Spool, 520 F.3d at 18. In such cases, the plaintiff must plead facts suggesting that the predicate acts are the regular means through which the business is operated or that the nature of the predicate acts themselves implies the threat of continued criminal activity. Cofacrèdit, S.A., 187 F.3d at 243.

Here, GLD alleges in his amended complaint that "[c]ommencing in December 2014 and continuing through May 2015, Michael and Myers conducted and/or participated in the conduct of the Company's affairs through a pattern of criminal racketeering activity." (Doc. No. 26 at ¶ 116.) GLD asserts that Michael and Myers repeatedly engaged in wire and mail fraud, which are

enumerated acts of racketeering activity set forth under 18 U.S.C. § 1961. The amended complaint details the following alleged instances of wire fraud committed by Myers in violation of 18 U.S.C. § 1343:

(i) An April 24, 2015 e-mail from Myers to GLD with attachments of the draft schedules to the Stock Purchase Agreement that contained "many inaccuracies," with regard to certain environmental permits;

(ii) A May 14, 2015 e-mail Myers sent to GLD at 5:12 p.m. that included more detailed versions of the draft schedules to the Stock Purchase Agreement, but remained unchanged as to the inaccurate reports concerning the environmental permits;

(iii) A May 14, 2015 e-mail Myers sent to GLD at 7:58 p.m. with the schedules to the Stock Purchase Agreement and corresponding attachments that were unaltered as to the disclosures regarding the environmental permits; and

(iv) A May 27, 2015 e-mail from Myers to GLD attaching certain financial information that was contradicted by tax returns filed by the Company for the same period.

(Id. at 28-29 ¶ 117.) GLD also sets forth the following specific incidences in which Michael purportedly participated in mail fraud in violation of 18 U.S.C. § 1341, including:

(i) A letter sent by Michael on December 3, 2014 that inaccurately represented the "amounts of orders and deposits held by [the Company] in an effort to entice Gordon to visit and purchase [the Company]; and

(ii) The transmission by Michael of the executed Stock Purchase Agreement via overnight courier on May 28, 2015 that contained "numerous inaccuracies."

(Id. at 29-30 ¶ 117.) According to GLD, "[a]ll of Michael's and Myers' predicate acts of racketeering . . . were so related and continuous as to establish a pattern of racketeering activity . . . , as they had the same or similar purposes, i.e., to defraud Plaintiff[,] involved the same or similar participants and methods of commission and had similar results . . . ." (Id. at ¶ 118.)

Upon review of these factual allegations of a pattern of racketeering activity, the Court finds that the amended complaint fails to allege sufficient facts yielding a plausible inference that

a threat of continuing criminal activity existed beyond the period during which the predicate acts were performed, as is required to establish open-ended continuity. As a threshold matter, the Court observes that the alleged enterprise at issue here falls into the "legitimate business category," as Plaintiff does not allege that the enterprise is primarily engaged in inherently unlawful activity such as "murder or obstruction of justice." United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); World Wrestling Entm't, Inc., 530 F. Supp. 2d at 516 ("While embezzlement, extortion, bribery, and money laundering are in pursuit of inherently unlawful goals, fraud is not."); Skylon Corp. v. Guilford Mills, Inc., No. 93–CV–5581, 1997 WL 88894, at *6 (S.D.N.Y. Mar. 3, 1997) (holding that predicate acts of "verbal and written misrepresentations made over the telephone and in letters, constituting wire and mail fraud" are not "inherently unlawful," but rather are "typical of garden-variety fraud claims"). Along that vein, under the most liberal reading of the amended complaint, GLD's allegations fall short of providing a basis for the Court to infer that the predicate acts of alleged wire and mail fraud—committed in connection with sale of the Company—are reflective of the ordinary manner by which Michael and Myers operated the Company, or that the very nature of those alleged acts implies a threat of continuing racketeering projecting into the future. See Thai Airways Intern. Ltd. v. United Aviation Leasing B.V., 891 F. Supp. 113, 119 (S.D.N.Y. 1994) (holding that complaint failed to adequately plead open-ended continuity, as the factual allegations did not justify the inference that defendants' unlawful conversion of security deposits represented the ordinary way in which they conducted business); Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 408 (S.D.N.Y. 2013) (holding that "fraudulent practices . . . do not imply a threat of continuing criminal activity over time").

To the contrary, the predicate acts, as pled, concern an inherently terminable scheme. See GICC Capital Corp., 67 F.3d at 466 (finding no open-ended continuity where the alleged scheme to deprive plaintiff of assets was "inherently terminable"). Indeed, Count III of the amended complaint is grounded on allegations of an isolated number of communications occurring within a six-month timeframe over the course of the parties' exclusive negotiations for the purchase of Michael's interest in the Company, which ceased upon the consummation of the Stock Purchase Agreement. Bernstein v. Misk, 948 F. Supp. 228, 238 (E.D.N.Y. 1997) ("[E]ven though the scheme 'may have required a number of steps over a determinate period of time, . . . because of its terminable nature and single goal it does not meet the requirement of continuity.") (quotation marks and citation omitted). Such "[a]llegations of conduct[,] that by [their] nature or design ha[ve] an intended and foreseeable endpoint[, do] not constitute open-ended continuity." FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 371 (E.D.N.Y. 2002) (citation omitted) (holding that "allegations of mail, wire and bank fraud were committed in connection with the isolated sale of one product[,] . . . even if obtained through fraudulent means, constituted the natural end to that venture"); accord Bernstein v. Misk, 948 F. Supp. 228, 237 (E.D.N.Y. 1997) ("The alleged acts of mail and wire fraud were committed in connection with an isolated real estate venture, the QSCC project, which has been, or will be terminated, with no indication of repetition."); Aulicino, 44 F.3d at 1113 (distinguishing the alleged activities of a kidnapping ring from circumstances in which "a defendant ha[s] a piece of property the sale of which, even if by fraudulent means, provide[s] a natural end to his project").

GLD argues in its brief in opposition to Defendants' motion to dismiss that, should GLD succeed in this action, and the Court grant GLD relief in the form of rescission of the Stock Purchase Agreement, Michael will accordingly be placed back in charge of the Company, "and

11

therefore it [is] possible that [the Company] could [be] subject to the ongoing illegal activities of Michael and Myers." The Court, however, declines GLD's invitation to find a threat of continuing racketeering activity from such a conclusory allegation raised for the first time in Defendants' oppositional brief. See FD Prop. Holding, Inc., 206 F. Supp. 2d at 370 n.9 (finding plaintiff's argument that defendants' conduct in seeking payment under a letter of credit incorporated into a contract a year before gives rise to an inference of a continuing threat and plaintiff's assertion that "if [defendants] were willing to do such an outrageous thing here, what would stop them from doing it again" to be wholly conclusory and speculative); see also Bernstein, 948 F. Supp. at 237 (rejecting as conclusory an allegation that the nature of the predicate acts "project into the future with a threat of repetition").

Accordingly, the Court will grant Defendants' motion to dismiss Count III of the amended complaint, as GLD has failed to sufficiently allege a pattern of racketeering activity.

> B. COUNT IV-VIOLATION OF 18 U.S.C. § 1962(D) OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Count IV of the amended complaint asserts a claim of RICO conspiracy against Michael and Myers under 18 U.S.C. § 1962(d). Defendants seek dismissal of Count IV on the basis that GLD has failed to "state a substantive RICO claim upon which relief may be granted . . . ." (Doc. No. 31 at 7.)

The Court agrees. Having found no actionable violation of RICO under Section 1962(c) as to both Michael and Myers as a result of GLD's failure to allege a pattern of racketeering activity that exhibits open-ended continuity, the Court must dismiss Count IV of the amended complaint. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004) ("Finally, because [p]laintiffs did not adequately allege a substantive violation of RICO . . . on the part of either [defendant], the [d]istrict [c]ourt properly dismissed [the] . . . RICO conspiracy

[claim] in violation of 18 U.S.C. § 1962(d).") (citing Cofacredit, 187 F.3d at 244; Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), vacated on other grounds, 525 U.S. 128 (1998)).

Accordingly, the Court will grant Defendants' motion to dismiss Count IV of the amended complaint.

### IV.   CONCLUSION

Based upon the foregoing, the Court will grant Defendants' motion to dismiss Counts III and IV of Plaintiff's amended complaint.  (Doc. No. 29.)  An Order consistent with this Memorandum follows.